## SUPERIOR COURT OF BALTIMORE CITY.

Filed January 16, 1908.

FRANK T. GIBSON ET AL.

VS.

DIRECTORS OF THE MARYLAND PENITENTIARY ET AL.

*Goldsborough & Fletcher* and *Barton, Wilmer, Ambler & Stewart* for plaintiffs.

*Wm. S. Bryan, Jr.*, for defendants.

NILES, J.—

The main defense to this action of ejectment, which is raised by the pleas demurred to, is that the land sought

to be recovered is actually occupied by the State of Maryland for State purposes, to wit: a penitentiary; that, should there be a recovery, it could only be made effective by dispossessing the State itself of one of the buildings actually used in the necessary work of carrying on its government, and consequently the action is really a suit against the State in its sovereign capacity.

In the sense that the State has an interest which is directly affected and that the defendants have no personal interest, but are only holding the land as officials of the State, the defendants' contention is palpably and unquestionably true; and it is also true that neither in this country, nor England, can the State be sued without its consent, and that the State of Maryland has not given such consent.

But it is also true that in Maryland, in other States of the Union, and in the Federal government, the people have by Constitutional enactment forbidden either State or Nation, to take the land of a citizen for public purposes without compensation, and that in Maryland this compensation must be paid or tendered previously to the taking.

Now, it is obvious that if the State's agents could once get possession of the lands of a private individual, set up a penitentiary thereon, or use it for any other governmental purpose, and then defend themselves against the rightful owner by saying: "This land is occupied for governmental purposes, and any suit that you may bring to recover it is practically a suit against the State," the constitutional protection would be a vain and delusive thing.

Upon the solemn declaration of the people that the State must not confiscate private property, there would be engrafted the exception that should the agents of the State once succeed in unlawfully getting possession of private land, and putting it to a public use, the rightful owner would have no redress, except by grace of the very power that would be reaping advantage of the wrong.

It is certainly true that there are serious inconveniences when Courts are allowed to interfere with, restrain, or punish public officers, acting without malice, in good faith, in the discharge of their official duties, and in strict obedience to the orders of their superiors.

These inconveniences have been so apparent, that there has grown up in certain countries—France, for instance —a body of what is there called "Droit Administratif," that applies to an official of the government, acting as such, a different rule and a different measure of protection from what is applicable to non-official persons, and avowedly carries out the principle that administrative bodies must never be troubled in the exercise of their functions by any act whatever of the judicial power.

But it has been one of the features of the common law, in which English and American publicists have taken most pride, that it is no respecter of persons, and will punish an officer of State for a tort committed by him, although in good faith and without malice, and in strict obedience to orders, exactly as it would punish the same tort committed by a private person.

It is true that in England an action of ejectment for premises in the actual occupation of the Crown, stands on a different footing from other actions of tort in this respect, and cannot be maintained without consent of the Sovereign, although this consent seems to be given as a mere matter of course.

In this country, however, the Supreme Court of the United States has flatly and repeatedly decided that ejectment is to be treated in this regard like any action of trespass, and will lie against the persons actually in the wrongful possession of a plaintiff's lands, even though they hold these lands merely as officers of the government for the essential purposes of government and in strict obedience to the orders of their superiors; as for instance, the commandant of a navy yard or a fort.

Although the question as to the liability of our State officers to ejectment suits in the State Courts is not one arising under the Federal Constitution, still, on such a subject, the opinion of the Supreme Court should be of the highest authority in the absence of a contrary holding by our own Court of Appeals.

There has certainly been no such direct holding in Maryland; nor do the

rulings that the State, as such, cannot be liable for costs, and that in a suit by the State, set-off cannot be pleaded against it, appear to this Court, even indirectly, to indicate a different point of view on this question from that occupied by the Federal tribunals.

Furthermore, to this Court, the reason of the rule announced by the Supreme Court seems too plain for question.

Indeed, were the matter an open one this Court would go further and question whether there is any real necessity for the fundamental rule which protects the State itself from suit.

Whatever some of our ancestors may have thought of the peculiar and sacred character of kings and magistrates, we here and now, recognize that when we actually come into contact with "The State" we generally find it, in the concrete, to be (in the expressive phrase sometimes used) "an ordinary clerk with a pen behind his ear," while our abstract and theoretical conception is that "The State" is merely the body of those agents of the public who are carrying out the commands of the people as expressed in their Constitutional enactments.

If this body of men, or any one or more of them, instead of carrying out the command of the people as so expressed, fail in his or their duty and violate the instructions of his or their principal, it would seem to this Court, upon the whole, that the better reasoning would require that he or they should be liable to judicial process in every case, quite as much as the agent of a private person who fails to carry out his duty to his principal.

Various States have, in various degrees, allowed themselves to be sued in their Court, and nothing of dignity, or sovereignty, or ability to carry on the proper work of government, seems to have been lost thereby.

But of course the rule of exemption of the State is now a part of our law, and it matters little what might be the opinion of any Court, and particularly a Court of first instance, upon its merits as an abstract question.

Nevertheless, as the rule is fixed, so seem to this Court to be its limitations and exceptions. Among them is the limitation that if the agents of the State deprive one unlawfully of his real property he may bring an action against them for its recovery, no matter whether or in what manner the State reaps an advantage from their tort. Justice is attained in such a case by the application of some such legal fiction as this, viz: It is impossible for that impeccable entity—the State—to wrongfully occupy land, and therefore, if land of which the plaintiff is rightful owner is wrongfully withheld from him, this cannot be the act of the State or its authorized agents, but must be the act of individual wrong-doers, even though they do it for the State's benefit.

Of course, as a consequence of this principle that such defendants cannot in law be its agents to commit a tort, the State is not estopped by any judgment against them, but may file a bill in its own name to quiet title, or take such other action as may be fitting.

These being what the Court considers the true principles of decision, the demurrer to the defendants' fourth plea will be sustained.

The Court is of opinion, however, that "The Directors of the Maryland Penitentiary" is a *quasi* corporation for governmental agency upon which liability to suit is not imposed by any Statute, and, if the point were raised, would sustain a demurrer to the declaration as to it. The demurrer now interposed is, however, to the pleas; and although mounting up to the declaration, cannot be sustained as to the whole declaration when one of the two alleged tort feasors is held to be liable to the action.

There is also a demurrer to the second and third pleas, being pleas of limitations.

As the Court understands the changes made in the old law by our State legislation, the action of trespass for mesne profits is not made the main action into which the action of ejectment is merged; nor is it—so to speak—merely federated with the action of ejectment, so that both are now carried on concurrently in one suit. As the Court understands it, the old action of trespass for mesne profits is completely merged and lost, and, to cover the need for which it was used, the old action of ejectment is simply enlarged so as to include substantial as well as nominal

damages. If this be so, nominal damages at least are recoverable with every successful ejectment suit, and no plea can be good as against all pecuniary damages whatever, unless it be good as against the whole action.

If the law, as above stated, be correct, it is evident neither a plea that "the alleged cause of action" nor that the alleged cause of action, "so far as it relates to pecuniary damages" "did not accrue within three years" would be a good plea.

The demurrer, therefore, as to the second and third pleas, will be sustained.

It is not necessary to consider in this opinion whether, under the Code, any plea is allowed in ejectment except the general issue plea of "not guilty" or pleas "on equitable grounds," as counsel are understood to desire that the main question, as to whether ejectment could be brought for ground covered by the State Penitentiary, should be decided by this Court.

It would be very ungracious not to acknowledge the indebtedness to the counsel on both sides which the court feels for their able arguments and for their full citations of authorities, all of which have been carefully examined by the Court and have led to the above conclusions.